UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIN SHARAY,                                    Case No. 15-12531

          Plaintiff,                          Avern Cohn
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Stephanie Dawkins Davis
                                               United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 20, 21)**

I.      **PROCEDURAL HISTORY**

    A.      Proceedings in this Court

On July 16, 2015, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing disability insurance

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Avern Cohn referred this matter to Magistrate Judge

Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision

denying plaintiff's claims for disability insurance benefits.  (Dkt. 3).  This matter

was reassigned to the undersigned pursuant to Administrative Order on January 5,

2016.  (*See* Text-only Order of Reassignment). Both parties filed motions for

summary judgment in this case.  (Dkt. 20, 21).  This matter is now ready for report

1

and recommendation.

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for disability insurance benefits and supplemental security income on July 18, 2011, alleging disability beginning July 1, 1986.[1] (Dkt. 11-2, Pg ID 53, Dkt. 11-3. Pg ID 133). On January 17, 2012, plaintiff was found disabled with respect to his application for supplemental security income as of July 18, 2011, but was denied for disability insurance benefits on the basis of insufficient evidence of disability prior to December 31, 1987, his date last insured. (Dkt. 11-2, Pg ID 53). Plaintiff requested a hearing and on January 31, 2013, plaintiff testified before Administrative Law Judge ("ALJ") John J. Rabaut, who considered the case *de novo*. (Dkt. 11-2, Pg ID 74-93). In a decision dated March 4, 2013, the ALJ found that plaintiff was not disabled. (Dkt. 11-3, Pg ID 133-143). Plaintiff requested a review of this decision, and the Appeals Council granted plaintiff's request for review and remanded the case for further consideration of plaintiff's RFC on July 31, 2013. (Dkt. 11-2, Pg ID 53; Dkt. 11-3, Pg ID 150-151). On September 9, 2013, after reconsideration on remand, the ALJ again issued a decision in which he found plaintiff was not disabled prior to his date last insured. (Dkt. 11-2, Pg ID 53-61). This decision

---

[1] Plaintiff amended his alleged onset date from October 1, 2009, to May 17, 2013, at the hearing. (Dkt. 9-2, Pg ID 60).

became the final decision of the Commissioner when the Appeals Council, on May 15, 2015, denied plaintiff's request for review. (Dkt. 11-2, Pg ID 33-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner of Social Security be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1950 and was 37 years old on the date last insured . (Dkt. 11-2, Pg ID 60). Plaintiff had past relevant work as a general laborer. (Dkt. 11-2, Pg ID 59). The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity from the alleged on-set date of July 1, 1986 to the date last insured of December 31, 1987. (Dkt. 11-2, Pg ID 56). At step two, the ALJ found that plaintiff had the following severe impairments: traumatic brain injury and disorder of the spine. (*Id.*) At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*; Dkt. 11-3, Pg ID 135-137).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform sedentary work...

> except occasional operation of foot controls; no climbing ladders,
> ropes or scaffolds; occasional climbing of ramps and stairs,
> balancing, stooping, crouching, kneeling, and crawling; occasional
> overhead reaching and handling; avoidance of use of moving
> machinery and exposure to unprotected heights; work would be
> limited to simple, routine and repetitive tasks; performed in a work
> environment free of fast paced production requirements; involving
> only simple work-related decisions; and with few, if any, workplace
> changes; and only occasional interaction with the public and with
> coworkers and no tandem tasks.

(Dkt. 11-2, Pg ID 56).  At Step Four, the ALJ found that plaintiff could not

perform his past relevant work.  (Dkt. 11-2, Pg ID 59).  However, the ALJ

determined that, through the date last insured, considering plaintiff's age,

education, experience, and RFC, there were jobs that exist in sufficient numbers

that plaintiff could have performed and therefore, plaintiff had not been under a

disability.  (Dkt. 11-2, Pg ID 60-61).

    B.    Plaintiff's Claims of Error

        Plaintiff points out that the Appeals Council remanded this case to an ALJ

and directed that, on remand, the ALJ will:

> Obtain evidence from a vocational expert to clarify the effect of the assessed
> limitations on the claimant's occupational base (Social Security Rulings
> 83-14 and 96-9p). The hypothetical questions should reflect the specific
> capacity/limitations established by the record as a whole. The
> Administrative Law Judge will ask the vocational expert to identify
> examples of appropriate jobs and to state the incidence of such jobs in the
> national economy (20 CFR 4094.1566). Further, before relying on the
> vocational expert evidence, the Administrative Law Judge will identify and

4

resolve any conflicts between the occupational evidence provided by the
vocational expert and information in the Dictionary of Occupational Titles
(DOT) and its companion publication, the Selected Characteristics of
Occupations (Social Security Ruling 00-4p).

 (Dkt. 11-3, Pg ID 151).

Plaintiff argues that the ALJ committed reversible error in failing to even
conduct a hearing following remand, much less obtain vocational expert testimony
as directed. (Dkt. 20, Pg ID 561-565).  Plaintiff contends that, on remand from the
Appeals Council, "[t]he administrative law judge shall take any action that is
ordered by the Appeals Council and may take any additional action that is not
inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).
Plaintiff cites *Salvati v. Astrue*, 2010 WL 546490, *5-8 (E.D. Tenn. Feb. 10, 2010),
which held that the procedural requirement for an ALJ to follow the specific
instructions given to him in a remand order from the Appeals Council exists to
ensure that each claimant receives fair process, and, therefore, an ALJ's failure to
follow the dictates of a remand order is an error that necessitates remand.  Plaintiff
argues further that substantial evidence alone does not excuse non-compliance with
the Appeals Council's remand order.  *See Wilson*, 378 F.3d at 546 ("To recognize
substantial evidence as a defense to non-compliance . . . would afford the
Commissioner the ability to violate the regulation with impunity and render the
protections promised therein illusory. The general administrative law rule, after all,

5

is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action. . . found to be . . . without observance of procedure required by law.'" (quoting Administrative Procedure Act, 5 U.S.C. § 706(2)(D)(2001))).

Here, plaintiff asserts that the Appeals Council's order specifically provided that the ALJ take certain actions, specifically obtaining evidence from a vocational expert. (Dkt. 11-3, Pg ID 150). However, the ALJ did not conduct a new hearing, obtain additional vocational evidence by hearing, interrogatories or otherwise. Moreover, plaintiff was not given any opportunity to develop additional vocational testimony or further question the vocational expert.  Instead, argues plaintiff, the ALJ himself took on the role of vocational expert. See, e.g., (Dkt. 11-2, Pg ID 54) ("I have also reviewed and reconciled the vocational experts (sic) testimony with the information provided in the DOT and SCO"); (Dkt. 11-2, Pg ID 61) ("I find no conflict between the occupational evidence provided by the vocational expert and the information provided in the DOT and SCO, and, therefore, it is unnecessary to obtain additional evidence from the vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base"). Yet, according to plaintiff, it was not the ALJ's role to resolve the inconsistencies between the VE's testimony and the DOT as identified by the Appeals Council, but the role of a vocational expert. (Dkt. 11-3, Pg ID 150). See SSR 00-4p, 2000 WL 1898704

6

(S.S.A. 2000) (stating that if the vocational evidence appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation [from the VE] for the apparent conflict before relying on the VE's testimony" which stems from the ALJ's duty to "fully develop the record"). As a result, the ALJ failed to comply with either the letter or spirit of the Appeals Council order, warranting remand.

Plaintiff next argues that the ALJ's reasons for according "minimal weight" to Dr. Al-Malahy's opinions are not supported by substantial evidence. (Dkt. 20, Pg ID 565-569). Plaintiff asserts the "treating physician rule," which requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Wilson*, 378 F.3d at 541, 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff contends that the ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Id*. If the ALJ does not

accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.*

Plaintiff asserts that, in his March 4, 2012 decision, the ALJ gave little weight to Dr. Al-Malahy's opinions because "there are no treatment records prior to December 31, 1987 to substantiate Dr. Al-Malahy's findings" and "his ability to remember specific clinical findings on the claimant's functioning nearly 25 years prior is questionable." (Dkt. 11-3, Pg ID 139). "Dr. Al-Mahay also relied on 'repeated clinical examinations' but there is insufficient evidence of those exams in the file" and the "record simply does not support the severity of these restrictions, especially in light of the lack of treatment notes . . . ." (Dkt. 11-3, Pg ID 139-140). According to plaintiff, after remand, the ALJ, again discounted Dr. Al-Malahy's opinion:

> given that Dr. Al-Malahy's (sic) describes that the claimant's condition (sic) as progressive, the fact that he did not examine the claimant until 8 months after his injury, and his representation that his opinion as to the claimant's "disability" relies on CT scans (sic) MRI testing performed more than 10 years after the claimant's alleged onset date, it is wholly inappropriate to afford his assessment any significant weight as to the issues presented. The additional evidence presented, which consists of single physical examination

8

and several ambiguous follow-up appointment summaries, does not change this fact. I also note that the newly found treatment notes reflect an 8-month treatment gap, during which time Dr. Berke found that the claimant would be able to return to vocational abilities with restrictions of no excessive and repetitive bending, lifting, [or] twisting. Accordingly, I give minimal weight to Dr. Al-Malay's assessment and treatment notes, as they do not support the claimant's allegations that he was been (sic) precluded from performing work at the residual functional capacity (sic) prior to his date last insured. I afford greater weight to Dr. Berke's reports, noting that, while conclusory in nature, they are relatively consistent with the findings of the 1987 spinal x-rays, and provide at least some details regarding the extent to which the claimant's impairments restricted his ability to perform past-relevant work.

(Dkt. 11-2, Pg ID 59). Plaintiff argues that the ALJ's findings are not supported by substantial evidence. First, according to plaintiff, the progress notes confirm all of the findings on examination and the diagnoses reported by Dr. Al-Malay in his detailed questionnaire. (*Compare* Dkt. 11-7, Pg ID 434-436 with Dkt. 11-7, Pg ID 481-484). Plaintiff attests that these findings are significant as they document that plaintiff's back impairment met several of the criteria of Listing 1.04A which describes "disorders of the spine" and requires

> "compromise of a nerve root (including the cauda equina) or the spinal cord" and:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A (hereinafter "Listing 1.04A").

9

Second, plaintiff contends that the fact that Dr. Al-Malahy began treatment eight months after the initial injury is not a proper basis to reject his opinion. His treatment began prior to plaintiff's date last insured of December 31, 1987 and his detailed examination findings, coupled with the x-ray evidence support his findings. According to plaintiff, Dr. Al-Malahy certainly had the longitudinal perspective of plaintiff's impairments envisioned in the regulations.

Third, the ALJ cited the "single page 'checklist'" statements of Dr. Berke, the industrial doctor examining plaintiff for his work-related injury. (Dkt. 11-2, Pg ID 57). However, Dr. Berke's records generally consist of single page checklist forms with no records of examination findings or supportive progress notes. (Dkt. 11-7, Pg ID 307-318). In his initial decision, the ALJ himself described these forms as "conslusory, with limited explanation or diagnoses to support the findings." (Dkt. 11-3, Pg ID 141). In any event, Dr. Berke consistently limited plaintiff from any excessive and repetitive bending, lifting, twisting and sitting, findings which are, in fact, not inconsistent with the findings of Dr. Al-Malahy who opined that, on a regular and sustained basis, plaintiff was limited to sitting for up to one hour and lifting up to five pounds. (Dkt. 11-7, Pg ID 440). Plaintiff argues that Dr. Berke's conclusory opinion is simply not a proper basis to discredit the findings of Dr. Al-Malahy. Moreover, plaintiff argues that Dr. Berke's restrictions are greater than found by the ALJ in his RFC finding, which found that Mr. Sharay can

10

perform sedentary work which entails sitting for up to 6 hours in an 8-hour workday with occasional crouching, stooping, kneeling, crawling and overhead reaching.

Finally, plaintiff notes that Dr. Al-Malahy's opinion was not inconsistent with that of Dr. Muslah, who treated plaintiff from 2010 through 2012 and reviewed his prior medical records. He specifically opined that due to his spinal impairment, pain, fatigue, and knee stiffness/cramping, plaintiff was limited to sitting two hours during a workday, standing/walking two hours during a workday, frequently lifting up to five pounds, limitations which are very similar to those found by Dr. Al-Malahy. (Dkt. 11-7, Pg ID 476, 481). Dr. Muslah also opined that "[b]ased on medical record review, the patient['s] disability/condition has been present prior to 1987." (Dkt. 11-7, Pg ID 476-477) (Emphasis in original).

Plaintiff next argues that the ALJ committed reversible error in failing to obtain medical expert testimony as required by SSR 83-20and ssr 96-6p, given the fact that plaintiff is currently receiving SSI disability benefits and given the lack of any opinion by a state agency medical consultant regarding medical equivalence. (Dkt. 20, Pg ID 569-574). The record documents that plaintiff's application for SSI benefits was approved on January 17, 2012, finding that he was disabled as of July 18, 2011, which was the date of his application for SSI. (Dkt. 11-3, Pg ID 104, 133; Dkt. 11-5, Pg ID 209, 217-222). However, at that time, a single decision-maker

determined that the evidence was insufficient to make a decision regarding the

severity of his impairments prior to his date last insured of December 31, 1987.

(Dkt. 11-3, Pg ID 113).

This decision was reaffirmed by Libbie Russo, M.D. on March 22, 2012, due to the

lack of medical evidence of record. (Dkt. 11-7, Pg ID 428). After that date,

additional records were added to the record, including the reports from Dr. Berke

and Dr. Al-Malahy, which related to the relevant period, as the ALJ acknowledged.

(Dkt. 11-3, Pg ID 140). However, the record is devoid of any review of this new

evidence by any medical consultant as required, warranting remand, according to

plaintiff. The combination of the prior finding of disability, along with the lack of

review by any medical expert of the evidence to determine if plaintiff's impairment

met or equaled a Listing prior to plaintiff's date last insured, requires remand to

obtain such testimony according to plaintiff.

Plaintiff contends that SSR 83-20 requires ME testimony regarding the onset

of disability. In *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997), the Sixth

Circuit held that the provisions of Social Security Ruling 83-20 apply "when there

has been a finding of disability and it is necessary to determine when the disability

began." Given the award of SSI, SSR 83-20 applies and required that the ALJ

obtain the testimony of a medical advisor regarding onset. See SSR 83-20, 1983

WL 31249 (S.S.A. 1983).

SSR 83-20 advises: With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. How long the disease is determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor as to when onset should be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made. *Id.* In this case, plaintiff argues, given the evidence that he is currently disabled as evidenced by his receipt of SSI disability benefits, the ALJ failed to comply with SSR 83-20 in not calling a medical advisor regarding the onset date of his impairments.

Plaintiff further contends that SSR 96-6p requires a medical advisor given the lack of medical evidence by any medical expert. In his decision, the ALJ claimed that the "additional evidence submitted does not warrant a change" in his

13

findings from his March 2013 decision that "[t]hrough his [DLI], the claimant did

not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1. . . ." (Bolding omitted). In the March 2013 decision, the ALJ

claimed that the: claimant is not so functionally limited and the evidence does not

support the required medical findings required by listing 1.04. (Dkt. 11-3, Pg ID

126).  However, in so finding, plaintiff contends that the ALJ is making medical

findings he is not qualified to make. As also noted, the State agency medical

consultant did not have the opportunity to review the new evidence submitted by

Dr. Al-Mahay to determine whether a listing may be met or equaled as required by

SSR 96-6p. (Dkt. 11-7, Pg ID 434-486). As such, plaintiff argues that this Court

should remand this case with instructions to obtain ME testimony.

As set forth in Social Security Ruling 96-6p: longstanding policy requires

that the judgment of a physician (or psychologist) designated by the Commissioner

on the issue of equivalence on the evidence before the administrative law judge or

the Appeals Council must be received into the record as expert opinion evidence

and given appropriate weight. The signature of a State agency medical or

psychological consultant on an Disability Determination and Transmittal Form or a

Cessation or Continuance of Disability or Blindness ensures that consideration by

a physician (or psychologist) designated by the Commissioner has been given to

14

the question of medical equivalence at the initial and reconsideration levels of administrative review. SSR 96-6p,1996 WL 374180 (S.S.A. 1996). In this case, since no State agency physician ever reviewed the updated medical evidence, including Dr. Al-Mahay's progress notes and objective testing from the relevant period, remand is required.  Plaintiff cites *Maynard v. Astrue*, 2012 WL 5471150, at *6 (E. D. Mich. Sep. 11, 2012)(Cohn, J.); *Harris v. Comm'r of Soc. Sec*., 2013 WL 1192301, at *6-8 (E.D. Mich. Mar. 22, 2013) (Ludington, J.)("[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [Plaintiff's] impairments...in combination equal one of the Commissioner's listings."); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004)("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue"); *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) ("[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made"). Plaintiff urges this Court order a remand in this case.

Plaintiff argues that the RFC fashioned by the ALJ lacked medical support and thus was not supported by substantial evidence.  (Dkt. 20, Pg ID 574-576). Plaintiff contends that the ALJ rejected the opinions of the only medical providers who rendered opinions regarding plaintiff's functioning prior to his date last insured, Dr. Al-Sharay and Dr. Muslah. (Dkt. 11-2, Pg ID 59; Dkt. 11-3, Pg ID

139-140). Since the record did not contain any other assessments, it is apparent that the ALJ took on the role of medical expert and translated the raw medical data into functional limitations, which was improper. *See Porzondek v. Secretary of Health and Human Servs.*, 1993 WL 15135, at *2 (6th Cir. Jan. 22, 1993) (unpublished) (holding that since the medical evidence was inadequate to form a basis for the ALJ's finding regarding the claimant's RFC, the Commissioner's failure to order a consultative examination or to seek the advice of a medical examiner resulted in a failure to meet his burden of proof); *Zaft v. Comm'r of Soc. Sec.*, 2013 WL 5340772, at *12 (E.D. Mich. Sept. 23, 2013) (given the "lack of any other medical opinion regarding plaintiff's functional limitations," the court was "left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion," which was improper, noting that "courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data"); *Vaughn v. Comm'r of Soc. Sec.*, 2015 WL 5216165 (E.D. Mich. Sept. 4, 2015) (given the lack of medical opinions, "an expert medical advisor is absolutely critical to properly evaluating plaintiff's impairments, symptoms, and functional limitations"); *Thompson v. Comm'r of Soc. Sec.*, 2011 WL 766668, at *8 (W.D. Mich. Feb. 4, 2011) (holding that the ALJ's RFC finding lacked an evidentiary basis because the ALJ did not rely on any medical evidence to

support his finding regarding the extent of the claimant's visual limitation, and the ALJ failed to elicit an opinion from the ME regarding the claimant's visual limitations). Similarly, plaintiff asserts that the ALJ erred in not updating the record and seeking the advice of a medical examiner regarding plaintiff's functional limitations to assist in determining his RFC, warranting remand. Accordingly, this Court should also remand this case with instructions to obtain a medical expert opinion.

In his final argument for remand, the plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence. (Dkt. 20, Pg ID 576-578).  In support of his credibility finding, the ALJ stated, "[t]he credibility as to the claimant's allegations of disabling symptoms is further called into question by the large gap of 25 years between his onset date and the application date." (Dkt, 11-3, Pg ID 141).  However, plaintiff received disability benefits from his work after his accident which would offset Social Security benefits. (Dkt. 11-2, Pg ID 80; Dkt. 11-7, Pg ID 297-306Tr. 48, 260-269). He then moved to Yemen in 1987 where he stayed until 2010 or most of that 25 year gap and applied a year later. (Dkt. 11-7, Pg ID 434, 459). The ALJ also commented on the fact that plaintiff's function reports "offer little in terms of the claimant's functional abilities prior to the expiration of the date last insured, as he completed them in 2011, almost 24 years later." (Dkt, 11-3, Pg ID 141).  Plaintiff argues that, from his

17

testimony it is apparent that his functioning has not improved significantly since his industrial accident. Performing minimal daily activities as he is able, confined to his home, is not in any way inconsistent with his disability claim. The Commissioner determined that plaintiff is entitled to SSI benefits commencing as of July 18, 2011, which was the same date he completed the function report, and further supports his disability claim. (Dkt. 11-3, Pg ID 104; Dkt. 11-6, Pg ID 261-268). Plaintiff asserts that, had the ALJ properly credited plaintiff's testimony, the VE's testimony supports a finding of disability. The VE testified that competitive employment would be precluded for an individual who could not work on a regular or continuing basis or who would be off task more than 20 percent of the workday. (Dkt. 11-2, Pg ID 90-91).

C.      The Commissioner's Motion for Summary Judgment

The Commissioner rejects as untenable Plaintiff first argument that the ALJ purportedly erred by failing to follow the Appeals Council's remand order to obtain supplemental VE testimony. (Dkt. 21, Pg ID 594-597). While the Sixth Circuit has yet to address this issue, numerous other courts in this district have held that an ALJ's compliance with an Appeals Council remand order is not judicially reviewable. *Accord Godbey v. Colvin*, 2014 WL 4437647, at *5 (W.D. Ky. Sept. 9, 2014) (noting Sixth Circuit has not considered issue); *Blajei v. Comm'r of Soc. Sec.,* 2012 WL 3020026, at *8 (E.D. Mich. June 18, 2012) (refusing to consider

18

ALJ's compliance with Appeals Council's remand order); *Betson v. Comm'r of Soc. Sec.*, 2010 WL 1064434, at *4 (E.D. Mich. Mar. 22, 2010) (same); *Peterson v. Comm'r of Soc. Sec.*, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010) (same). The Commissioner contends that plaintiff does not even acknowledge, let alone make any concerted effort at distinguishing, these cases from this Court which are in direct conflict with his position.

According to the Commissioner, this Court only has the statutory authority to review final decisions of the Commissioner—not intermediate administrative processes. *See* 42 U.S.C. § 405(g); *Peterson*, 2010 WL 420000 at *7 (and cases cited therein). Because the ALJ's compliance with the Appeals Council's remand order is an "intermediate administrative process," it is not reviewable by this Court. *See Betson*, 2010 WL 1064434 at *4. As the court explained in *Betson*, whether the ALJ complied with the remand order "is not material to whether the ALJ's decision is supported by substantial evidence." *Id.* Indeed, in this case, like those cited above, plaintiff sought review by the Appeals Council for a second time following the ALJ's second decision. (Dkt. 11-2, Pg ID 48-49). "By failing to remand the matter a second time, it appears the Appeals Council considered the ALJ's [decision] to be in compliance with the Council's previous order of remand . . . ." *Peterson*, 2010 WL 420000 at*7 (quoting *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009)).

19

The Commissioner further argues that plaintiff has not argued that the ALJ's step five analysis of the VE's testimony was unsupported by substantial evidence and has therefore waived any argument with respect to the ALJ's step five findings. See *Krzyaniak v. Comm'r of Soc. Sec.*, 2014 WL 4209599, at \*7 (E.D. Mich. Aug. 26, 2014) (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)). Nevertheless, even if the Court were to take up this issue, the Commissioner asserts that the ALJ's step five findings are supported by substantial evidence.

The Commissioner notes that, at step five, the ALJ presented a hypothetical question to the VE seeking jobs that could be performed with only occasional overhead reaching and handling. (Dkt. 11-2, Pg ID 60, 89; Dkt. 11-3, Pg ID 142). The ALJ observed the Dictionary of Occupational Titles ("DOT") does not distinguish between overhead reaching and reaching in other directions, but concluded there is no regulatory requirement suggesting greater specificity is needed to clarify the restriction, nor does this create an "inconsistency" with the DOT. (Dkt. 11-2, Pg ID 60-61). Thus, the simple fact that the DOT provides that the jobs identified by the VE require frequent reaching, does not mean they necessarily require frequent overhead reaching. (*Id.*); *see, e.g., Smith v. Astrue*, 2012 WL 1232272, at \*12 (N.D. Ohio Aug. 12, 2012) (jobs identified by VE "do indicate that reaching is required 'occasionally,' meaning up to one-third of the time, but Plaintiff provides no evidence that overhead reaching is required in these

20

DOT descriptions.") (Emphasis added). Thus, the ALJ found no conflict existed between the VE's answer to the hypothetical question and the DOT. (*Id.*).

Moreover, the Commissioner argues that the ALJ and the VE were not bound by the DOT because SSA regulations do not require them to rely exclusively upon the DOT. *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). Furthermore, the Commissioner argues that because SSR 00-4p recognizes that a VE may be able to provide more specific information about jobs than the DOT, it permits an ALJ to rely on the VE over the DOT as long as the ALJ explains his reasoning. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Therefore, when the ALJ asked the VE if his testimony conflicted with the DOT and the VE responded it did not, "the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs that he identified with an overhead reaching restriction." (Dkt. 11-2, Pg ID 60); see *Smith*, 2012 WL 1232272 at *12.

The Commissioner next argues that the ALJ properly afforded Dr. Al-Malahy's 2012 opinion "minimal weight," finding it inconsistent with the objective medical evidence and the record as a whole, especially with plaintiff's pre-DLI medical records and objective tests. (Dkt. 11-2, Pg ID 58-59). (Dkt. 21, Pg ID 597-602). This satisfies the requirement that the ALJ provide "good reasons" for discounting a treating source opinion. The Commissioner notes that Dr. Al-Malahy did not offer a functional assessment of plaintiff prior to his DLI. (Dkt.

21

11-2, Pg ID 58; see Dkt. 11-7, Pg ID 434-443). Instead, the record contains a treatment note from February 28, 1987 and summaries of several follow-up appointments during this same time. (Dkt. 11-2, Pg ID 58; see Dkt. 11-7, Pg ID 481-486). The ALJ noted that although Plaintiff's physical exam on February 28, 1987 showed reduced extension, flexion, and motor strength, positive straight leg raises, and slow and stiff gait. (Dkt. 11-2, Pg ID 58; see Dkt. 11-7, Pg ID 481-484). X-ray examinations the same day showed straightening of the lower spine "mostly due to muscle spasms," decreased disc height, end plate sclerosis, and marginal bone spurs. (Dkt. 11-2, Pg ID 58; see Dkt. 11-7, Pg ID 456-457). But as the ALJ noted, these and other x-ray examinations prior to Plaintiff's DLI did not show disc herniation, spinal stenosis, nerve root involvement, or specific intervertebral body degenerative changes. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 452-457). Thus, the ALJ concluded Plaintiff's pre-DLI physical examination and objective tests were inconsistent with Dr. Al-Malahy's opinion (authored some twenty-five years later). (Dkt. 11-2, Pg ID 59); see 20 C.F.R. § 404.1527(c)(2), (4) (opinion due more weight "the more consistent [it] is with the record as a whole"). Instead, the Commissioner contends that the ALJ supportably determined that because objective tests in 1997 and 2007 showed degenerative changes and nerve root compression, Dr. Al-Malahy's impression of a progressive impairment was more accurate. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 448-451). The Commissioner

22

argues that Dr. Al-Malahy's impression that Plaintiff's impairment was progressive, coupled with Plaintiff's objective medical findings in 1986 and 1987 (contrasted with the objective findings two decades later), provides substantial evidence to discount Dr. Al-Malahy's opinion. *See Liebisch v. Sec'y of Health & Human Servs.*, 21 F.3d 428, 1994 WL 108957, at *2 (6th Cir. 1994) ("Given the progressive, degenerative nature of her problems, [the doctor's] report, while probative of [plaintiff's] 1990 condition, is necessarily less accurate regarding her condition between 1985–1989") (emphasis added); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (ALJ properly rejected eight month post-DLI opinion concerning degenerative disorders); *Jones v. Comm'r of Soc. Sec.*, 2015 WL 1004681, at *8 (E.D. Mich. Mar. 6, 2015) ("evidence issued after a date last insured generally lacks probative value.")

The Commissioner also asserts that the ALJ properly found Dr. Al-Malahy's opinion inconsistent with other medical evidence of record, including Dr. Berke's treatment notes. (Dkt. 11-2, Pg ID 59); *see Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) (inconsistency with other medical opinions valid reason to discount treating source). On two occasions in November 1986, Dr. Berke indicated Plaintiff could not return to "vocational activities." (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 310, 317). However, the other notes drafted by Dr. Berke all indicate Plaintiff could return to vocational activities with no excessive or

23

repetitive bending, lifting, or twisting. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 308-309, 312–316). Thus, contrary to Dr. Al-Malahy's opinion, Dr. Berke indicated, just one month before Plaintiff's DLI, that he could return to vocational activities, with only these specified limitations. (*Id*.). The ALJ also noted Dr. Berke did not limit Plaintiff's walking or standing, nor did he provide a specific lifting restriction. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 308-309, 312–316). Given Dr. Berke's treatment of Plaintiff contemporaneously with his workplace injury, the Commissioner contends the ALJ properly found the inconsistency between his notes and Dr. Al-Malahy's opinion was a proper basis to discount the latter.

The Commissioner argues that the ALJ properly found Dr. Al-Malahy's opinion was not well supported by objective medical evidence. (Dkt. 11-2, Pg ID 58-59); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (treating sources' opinions warrant deference "only . . .when supported by objective medical data").  Specifically, the Commissioner emphasizes that the ALJ observed it had been more than twenty-five years since Dr. Al-Malahy examined Plaintiff prior to the expiration of his insured status. (Dkt. 11-2, Pg ID 58 & n.2). Furthermore, to the extent Dr. Al-Malahy relied upon Plaintiff's objective testing, all but the 1987 x-ray examinations were performed after Plaintiff's DLI. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 448-453); *cf. Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir 2003) (post-DLI evidence did not demonstrate plaintiff's

24

"conditions necessarily arose during her insured period"). Thus, according to the Commissioner, the only pre-DLI objective testing did not support Dr. Al-Malahy's opinion. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 454-457).

Finally, the Commissioner disputes plaintiff's suggestion that Dr. Al-Malahy's opinion was consistent with Dr. Muslah who opined Plaintiff was disabled prior to 1987. Dr. Muslah did not begin treating Plaintiff until twenty-four years after his DLI and his opinion was based solely on a review of unspecified medical records. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ provided "good reason" for rejecting treating physician's opinion where ALJ noted physician did not see claimant until two years after physician said claimant became disabled). The Commissioner posits that nearly all of these medical records post-date Plaintiff's DLI and those that do not fail to support either Dr. Al-Malahy's or Dr. Muslah's opinion.

The Commissioner next refutes plaintiff's argument that the ALJ erred by failing to enlist the help of a medical expert ("ME") to determine if he was disabled prior to his DLI. (Dkt. 21, Pg ID 602-607). According to the Commissioner, plaintiff's premise is flawed because SSR 83-20 does not require the ALJ to call upon an ME in every case involving a remote DLI, and neither the Sixth Circuit nor this Court has held the failure to do so requires remand. *See Scott v. Comm'r of Soc. Sec.,* 2012 WL 995265, at *10 n.2 (E.D. Mich. Mar. 5, 2012) (citing *Landsaw*

*v. Sec'y of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986)).  SSR 83-20 suggests that the use of an ME may be warranted when a claimant's DLI is far in the past and adequate medical records are not available. *See* SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983).  However where records exist relating to the relevant period, as plaintiff concedes is the case here, the ALJ is capable of reviewing these records and determining onset date.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836 (6th Cir. 2006) ("The portion of [SSR 83-20] that McClanahan relies on contemplates situations when an individual claims disability and *there is no development of the medical record* on which the ALJ can rely to ascertain onset.") (Emphasis added).  Therefore, the ALJ's failure to consult with an ME in this case is not cause for remand, especially where Plaintiff admits there was a medical record from the "relevant period" for the ALJ to evaluate.

The Commissioner also argues that plaintiff's reliance on SSR 96-6p is equally misplaced. Plaintiff suggests that because the state agency medical consultant did not have an opportunity to review new medical evidence, remand is required. +++9`SSR 96-6p provides for obtaining an updated medical opinion when "in the opinion of the administrative law judge" new medical evidence may change the state agency findings. See SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996). Thus, SSR 96-6p vests the discretion to obtain an updated medical opinion solely in the "opinion" of the ALJ. *Id.*  It does so, "[w]hen additional medical

26

evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96- 6p, 1996 WL 174180 at *4.

The Commissioner notes that it is Plaintiff's burden to prove he has an impairment that meets or equals an impairment in the Listing of Impairments. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). In his first decision (incorporated by reference into his second decision), the ALJ noted the state agency and consultative physicians did not indicate that Plaintiff met or equaled any listing.  (Dkt. 11-3, Pg ID 135-136).  Plaintiff does not dispute this finding; instead, he argues an ME should be provided with a chance to review his new medical evidence. But the ALJ already determined the new medical evidence "does not warrant a change" to his earlier finding that Plaintiff's impairments did not meet or equal any listing prior to his DLI. *Cf. Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012)("Claimant thus must demonstrate . . . that the ALJ believed the [new] records may have changed the experts' findings."). Plaintiff characterizes this as "making medical findings [the ALJ] is not qualified to make." (Pl.'s Br. 24). Plaintiff overlooks, however, that this is precisely the finding SSR 96-6p requires the ALJ to make.

Finally, even if the Court were to find the ALJ should have sought an

27

updated medical opinion, any failure to do so in this case was harmless error because the evidence does not support that Plaintiff's impairments met or equaled any listing prior to his DLI and remand would therefore prove futile. *Accord Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (2011) (discussing findings necessary to meet or equal listing 1.04); *McKenzie v. Colvin*, 2015 WL 9594255, at *4 (E.D. Mich. Nov. 30, 2015) ("even if the Court were to remand this case back for correction of these errors, the outcome would remain the same, and thus the errors are harmless") (citing *Rabbers v. Comm'r, Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009)).

To meet listing 1.04A (Listing applicable to back disorders), plaintiff must demonstrate degenerative disc disease together with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04(A). The Commissioner contends that none of the medical records prior to Plaintiff's DLI support a finding that his degenerative disc disease met or equaled all of the requirements of listing 1.04A. *See Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) (to meet or equal a listing, claimant must demonstrate all the specified medical criteria of the listing (or

medical findings equal in severity to all criteria)); *see also Freeman v. Comm'r of Soc. Sec.*, 2015 WL 404332, at *10 (E.D. Mich. 2015) ("Plaintiff argues that new evidence showed that his impairments were worse, yet he fails to identify evidence that would support a finding that Plaintiff meets or equals a listing."). Plaintiff even admits that the updated medical records, at most, "document that [his] back impairment met *several* of the criteria of listing 1.04A . . . ." (Emphasis added). The Commissioner urges that this is not enough. The ALJ correctly observed that evidence of nerve root compression (required to meet listing 1.04A) did not appear in any objective testing until Plaintiff's April 1997 MRI exam—nearly ten years after his DLI. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 449). Accordingly, the Commissioner maintains that the absence of an updated medical opinion does not require remand.

The Commissioner contests plaintiff's assertion that the ALJ erred because the RFC assessment was purportedly not based upon a medical opinion. (Dkt. 21, Pg ID 607-609). In support of his RFC assessment, the ALJ considered the objective medical evidence of record, Plaintiff's testimony, and opinion evidence. He then made a credibility determination based on the entire case record, consistent with SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (describing procedures for assessing RFC). Indeed, the ALJ supportably explained how the reports from Drs. Berke and Al-Malahy, the x-ray examination results, and Plaintiff's testimony all

29

support an RFC limiting Plaintiff to a restricted range of sedentary work through his DLI. (Dkt. 11-2, Pg ID 56; Dkt. 11-3, Pg ID 140).

The Commissioner argues that the ALJ specifically commented that Dr. Al-Malahy's treatment notes do not specify any functional limitations. (Dkt. 11-7, Pg ID 447). According to the Commissioner, the ALJ noted medical opinion evidence from Dr. Berke, as described above, showed Dr. Berke never imposed specific lifting, walking, or sitting restrictions. (Dkt. 11-2, Pg ID 57; see Dkt. 11-7, Pg ID 308-309, 312–316). Dr. Berke's limitations are reflected in the ALJ's decision to restrict Plaintiff to a limited range of sedentary work. (Dkt. 11-2, Pg ID 56; Dkt. 11-3, Pg ID 137, 141). Indeed, the Commissioner notes that the ALJ imposed functional limitations even greater than Dr. Berke suggested. (Dkt. 11-2, Pg ID 56; Dkt. 11-3, Pg ID 141). The ALJ also considered Plaintiff's testimony, to the extent he found it credible, and accounted for his alleged memory loss, dizziness, and back pain prior to December 1987 by imposing limitations restricting Plaintiff from working with moving machinery, requiring the avoidance of unprotected heights, and providing for a simple work environment. (Dkt. 11-2, Pg ID 56, 81).

In the alternative, the Commissioner argues that even if the Court accepts Plaintiff's argument, the ALJ's RFC assessment was more generous to Plaintiff than any medical opinion of record contemporaneous with Plaintiff's insured

period and therefore an RFC that is too limiting in Plaintiff's favor can be, at most, harmless error. *See Bradley v. Comm'r of Soc. Sec.*, 2013 WL 1190259, at \*11 (E.D. Mich. Jan. 8, 2013), adopted, 2013 WL 1190239, at \*2 & n.3 (E.D. Mich. Mar. 22, 2013).

Finally, the Commissioner argues that the ALJ's findings as to a plaintiff's credibility are entitled to deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). (Dkt. 21, Pg ID 609-610). Here, in addition to considering the objective and opinion evidence, described above, the ALJ considered other factors concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, consistent with 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p, 1996 WL 374186, at \*1 (July 2, 1996). The Commissioner argues that these factors further support the ALJ's determination that Plaintiff's testimony was not entirely credible.

The ALJ considered that, during his insured period, Plaintiff received only conservative treatment. (Dkt. 11-2, Pg ID 58; see Dkt. 11-7, Pg ID 485-486); see 20 C.F.R. §404.1529(c)(3)(iv) (permitting consideration of type of medication taken). The ALJ observed that Dr. Al-Malahy never prescribed a cane or similar device, physical therapy, or surgical intervention. (Dkt. 11-2, Pg ID 58; see Dkt. 11-7, Pg ID 485-486); *see id.* at §404.1529(c)(3)(v) (permitting consideration of treatment other than medication). The ALJ also noted that plaintiff was able to engage in long-distance travel to Yemen shortly after his injury. (Dkt. 11-3, Pg ID

31

139;  see Dkt. 11-2, Pg ID 82); *see Id.* at § 404.1529(c)(3)(vii) (permitting

consideration of "other factors").  Additionally, the Commissioner points out, that

while plaintiff claims to have treated with Dr. Al-Malahy in Yemen, the record is

devoid of the "frequent" follow-up appointments urged by Dr. Al-Malahy. (Dkt.

11-2, Pg ID 58; see Dkt. 11-7, Pg ID 485-486); see SSR 96-7p, 1996 WL 374186 at

*7 (permitting consideration of medical treatment history).  Finally, the ALJ noted

Plaintiff's function report indicated that he was able (albeit with some difficulty) to

dress, bathe, care for his hair, shave, eat, use the bathroom by himself, go outside

daily, drive, and ride in a car prior to his DLI. (Dkt. 11-3, Pg ID 138; see Dkt. 11-6,

Pg ID 261-268); see 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of

daily activities). Collectively, the Commissioner argues, this demonstrates the

ALJ's credibility determination was based on substantial evidence.

  D. <u>Plaintiff's Reply Brief</u>

  Plaintiff argues in his reply brief that the Commissioner's argument that` an

ALJ's failure to undertake the action directed by the Appeals Council on remand

"is not reviewable by this Court," reflects a minority view and should be rejected.

(Dkt. 22, Pg ID 613-616).  Plaintiff refutes the Commissioner's position that the

cases from this Court are in direct conflict with plaintiff's position.  Instead,

Plaintiff argues that upon review of the three cases cited by the Commissioner from

the Eastern District of Michigan– *Blajei v. Comm'r of Soc. Sec.*, 2012 WL 3020026

(E.D. Mich. June 18, 2012)(decision by Laurie J. Michelson, United States Magistrate Judge); *Betson v. Comm'r of Soc. Sec.*, 2010 WL 1064434 (E.D. Mich. Mar. 22, 2010) (decision by Thomas L. Ludington); *Peterson v. Comm'r of Soc. Sec.*, 2010 WL 420000 (E.D. Mich. Jan. 29, 2010) (decision by Gerald E. Rosen, adopting Report and Recommendation of Charles E. Binder) – it is apparent that none of the cases was actually decided by this Court, but by other judges. To the contrary, plaintiff argues that the Commissioner wholly fails to address Sixth Circuit authority specifically recognizing the need to remand due to an ALJ's "procedural error" of failing to follow an order from the Appeals Council.  Plaintiff argues that the Commissioner's attempt to distinguish *Fluker v. Comm'r of Soc. Sec.*, 2013 WL 1122876 (E.D. Mich. Feb. 11, 2013) is not  persuasive. It is not relevant that *Fluker* "concerned an Appeals Council remand order to obtain medical testimony[.]"  This in no way bears upon whether an ALJ's failure to comply with Appeals Council orders is reviewable.  Moreover, that *Fluker* reversed on multiple grounds does not make its determination as to the ALJ's violation of an Appeals Council order less valid as persuasive authority.

Finally, plaintiff argues that the weight of authority from federal courts sitting around the country indicates that an ALJ's violation of an Appeals Council remand order is subject to review. *See, e.g., Salvati v. Astrue,*, 2010 WL 546490, *5-8 (E.D.Tenn. Feb. 10, 2010); *Tauber v. Barnhart*, 438 F. Supp.2d 1366,

33

1375-76 (N.D. Ga. 2006); *Hutchison v. Apfel*, 2001 WL 336986, * 11 (N.D. Tex. 2001); *Allen v. Astrue*, 2007 WL 1276933, *3 (E.D. Pa. 2007). *See also, e.g., Mann v. Chater*, 1997 WL 363592, *3 (S.D.N.Y. 1997) ("The ALJ should have followed the order of the Appeals Council. . . . Because he did not, I must remand this action."); *Thompson v. Barnhart*, 2006 WL 709795, * 11-12 (E.D. Pa. 2006) ("The ALJ has . . . committed legal error by not following the mandate of the court, and by not following the regulations of the Social Security Administration itself which require adherence to the remand orders of the Appeals Council."). In accordance with this authority,  plaintiff asserts remand is warranted in connection with the ALJ's undisputed failure to comply with the Appeals Council's remand order in this case.

Plaintiff also asserts that, contrary to the Commissioner's assertion, he has in fact, attacked the ALJ's step five decision along with the ALJ's violation of the Appeals Council's remand order.  (Dkt. 22, Pg ID 616-618).  Plaintiff argues that it was not the ALJ's role to resolve the inconsistencies between the VE's testimony and the DOT as identified by the Appeals Council, but the role of a vocational expert. (Dkt. 11-3, Pg ID 150). See SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000) (stating that if the vocational evidence appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation[from the VE] for the apparent conflict before relying on the VE's testimony" which stems from the ALJ's duty to "fully

34

develop the record").   After asserting that an ALJ is not required to "rely

exclusively upon the DOT[,]" the Commissioner cites a single case to suggest that

a plaintiff must provide specific evidence of the overhead reaching for jobs at

issue. Id. at 11-12. The opinion cited by the Commissioner invokes no authority

establishing that such evidence must be proffered, *see Smith v. Astrue*, 2012 WL

1232272, at *12 (N.D. Ohio Apr. 12, 2012), whereas a myriad of courts

considering the precise issue of whether an ALJ is obligated at least to seek VE

clarification when, as here, a VE identifies jobs requiring frequent reaching while

the claimant is limited to occasional overhead reaching, have held that an ALJ errs

by failing to obtain such clarification.  Plaintiff cites *Richardson v. Astrue*, 2012

WL 5904733, (N.D. Cal. Nov. 26, 2012), in which the court recognized that many

courts, including the Seventh Circuit, have rejected the very argument the

Commissioner makes here.  Plaintiff argues that many Courts have held that there

is a potential inconsistency between: (1) VE testimony that a job could be

performed by someone who can only occasionally reach up; and (2) a DOT job

description that requires frequent reaching. For example, in *Prochaska v. Barnhart*,

the court held that "[i]t is not clear... whether the DOT's requirements include

reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ

should have resolved with the expert's help." *Id.*  Similarly, in *Jordan v. Astrue*, the

court held that "the Court has no way to determine whether substantial evidence

35

supports the ALJ's decision." *Id*.  The *Richardson* court agreed with the great weight of on point authority and remanded because "the ALJ relied upon VE testimony that specific jobs could be performed with only occasional overhead reaching, in conflict with the DOT requirement for frequent reaching." *Id.* A similar remand is clearly warranted here as a matter of law. *See also, e.g., Hilliard v. Colvin,*, 2015 WL 5568459, at *11 (W.D. Wash. 2015).

According to plaintiff, defendant further observes that "SSR 00-4p recognizes that a VE may be able to provide more specific information about jobs than the DOT," but that is not what happened here. Plaintiff argues that this observation actually supports remand.  The ALJ was instructed by the Appeals Council, in accordance with SSR 00-4p, to obtain the clarification envisioned by that Ruling in cases of potential conflict, but the ALJ insisted on short-circuiting the process by merely announcing that no specific information was needed.  For each of the above reasons, it is apparent that even were the Commissioner correct about whether violation of the Appeals Council's remand order is directly reviewable, the authority underlying that order nevertheless necessitates remand under the circumstances of this case.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal

citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.

Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

1.   *Appeals Council Remand Order*

Although the Sixth Circuit has yet to address this issue, numerous courts

42

within this district have held that an ALJ's compliance with an Appeals Council remand order is <u>not</u> judicially reviewable. *Blajei v. Comm'r of Soc. Sec.,* 2012 WL 3020026, at \*8 (E.D. Mich. June 18, 2012) (refusing to consider ALJ's compliance with Appeals Council's remand order); *Betson v. Comm'r of Soc. Sec.*, 2010 WL 1064434, at \*4 (E.D. Mich. Mar. 22, 2010) (same); *Peterson v. Comm'r of Soc. Sec.*, 2010 WL 420000, at \*7 (E.D. Mich. Jan. 29, 2010) (same); *see also, Godbey v. Colvin*, 2014 WL 4437647, at \*5 (W.D. Ky. Sept. 9, 2014) (noting Sixth Circuit has not considered issue).

> Where the Appeals Council denies request for review of an ALJ's decision, this Court reviews the decision of the ALJ rather than the findings of the Appeals Council. 20 C.F.R. § 404.981. In addition, since the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.

*Peterson v. Comm'r Of Soc. Sec.*, 2010 WL 420000, at \*7 (E.D. Mich. Jan. 29 2010)(citing *Riddle v. Astrue*, 2009 WL 804056, at \* 19 (M.D.Tenn. Mar. 25, 2009)); *see also Dishman v. Astrue*, 2009 WL 2823653, at \* 11 (E.D.Tenn. Aug.27, 2009); *Brown v. Comm'r of Social Security,* 2009 WL 465708, at \*6 (W.D.Mich. Feb.24, 2009)(By failing to remand the matter a second time, it appears the Appeals Council considered the ALJ's decision to be in compliance with the Council's previous order of remand Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the

administrative review process.).

Plaintiff cites authority to the contrary from other district courts in this circuit. *See Godbey v. Colvin*, 2014 WL 4437647 at *5 (W.D. Ky. Sept. 9, 2014) (holding that the claimant "has not received fair process as a result of the ALJ's failure to comply with the Commissioner's procedural requirement regarding directives in remand orders," which directed the ALJ to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairment"); *Drake v. Astrue*,, 2013 WL 1455804, at*6 (N.D. Ohio Apr. 9, 2013) (holding that the ALJ's failure to follow the Appeals Council's remand order "which in particular ordered him to obtain additional evidence regarding Plaintiff's onset date," coupled with the "lack of substantial evidence to support whether Plaintiff's impairments were severe and met the twelve-month durational requirement" supported remanding the case). Nevertheless, the undersigned finds the analysis of this split in the recent case of *Shope v. Comm'r of Soc. Sec.* compelling:

> "[T]here is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal absent other error." *Godbey v. Colvin*, 2014 WL 4437647, at *5 (W.D.Ky. Sept. 9, 2014). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit, which has not considered this particular issue." *Brown v. Comm'r of Soc. Sec*., 2009 WL 465708 (W.D.Mich. Feb.24, 2009); *Salvati v. Astrue*, 2010 WL 546490 (E.D.Tenn. Feb.10, 2010)). Some courts consider an administrative law judge's failure to comply with directives of the Appeals Council to be a procedural error that can be so great as to deny the claimant fair

process, *Godbey*, 2014 WL 4437647 at *6–7; *Salvati*, 2010 WL 546490 at *4–8; others assume, without deciding, that such an error may serve as an independent ground for reversal. *Keating v. Comm'r of Soc. Sec.*, 2014 WL 1238611, at *15 (N.D.Ohio Mar.25, 2014); *Kearney v. Colvin*, 14 F.Supp.3d 943, 950 (S.D.Ohio 2014); [*see also, Gholston v. Comm'r of Soc. Sec.*, 2009 WL 440956, at *12 (E.D. Mich. Feb. 23, 2009); *Fluker v. Comm'r of Soc. Sec.*, 2013 WL 1122876, at *15 (E.D. Mich. Feb. 11, 2013)].  The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand. *See O'day v. Comm'r of Soc. Sec.*, 2015 WL 225467, at *6 (W.D.Mich. Jan.16, 2015); *Verschueren v. Comm'r of Soc. Sec.*, 2014 WL 4925866, at *10 (W.D.Mich. Sept.30, 2014); *Caldwell v. Colvin*, 2014 WL 3747548, at *3 (E.D.Ky. July 29, 2014); *Cooper v. Colvin*, 2014 WL 2167651, at *2 (W.D.Ky. May 23, 2014) ("Plaintiff's contention that the ALJ's decision does not comply with the Remand Order is not cognizable in this judicial review."); *Prichard v. Astrue*, 2011 WL 794997, at *15 (M.D.Tenn. Feb.28, 2011) ("Plainly stated, this Court's scope of review 'is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council's Order of Remand.' "), report and recommendation adopted, 2011 WL 1113755 (M.D.Tenn. Mar.25, 2011); *Peterson v. Comm'r of Soc. Sec.*, 2010 WL 420000, at *7 (E.D.Mich. Jan.29, 2010) ("[S]ince 'the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.' "); *Dishman v. Astrue*, 2009 WL 2823653, at *11 (E.D.Tenn. Aug.27, 2009); *Riddle v. Astrue*, 2009 WL 804056, at *19 (M.D.Tenn. Mar.25, 2009); *Brown,* 2009 WL 465708 at *5 ("Plaintiff's appeal is inappropriate, because it seeks to have this court review an internal agency matter.... Nevertheless, the court concludes that it lacks jurisdiction to address plaintiff's claims."). This Court agrees that federal courts lack jurisdiction to consider whether an administrative law judge has complied with the Appeals Council's instructions on remand.

*Shope v. Comm'r of Soc. Sec.*, 2015 WL 3823165, at *8 (S.D. Ohio June 19, 2015),

report and recommendation adopted, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015).

The undersigned agrees with the overwhelming majority of courts in this circuit, as well as all of the courts in this district which have specifically discussed this issue, and concludes that federal courts lack jurisdiction to consider whether an ALJ has complied with an Appeals Council instruction on remand. Accordingly, plaintiff's motion should be denied as to this issue.

### 2.   *VE Testimony Not Supported by Substantial Evidence*

Plaintiff argues that it was not the ALJ's role to resolve the inconsistencies between the VE's testimony and the DOT as identified by the Appeals Council, but the role of a vocational expert. (Dkt. 11-3, Pg ID 150).   The Commissioner argues that the ALJ found no conflict existed between the VE's answer to the hypothetical question and the DOT because, although the jobs identified by VE may require reaching "occasionally," meaning up to one-third of the time, there is no evidence that overhead reaching is required in these DOT descriptions.  The Commissioner also argues that the ALJ and the VE were not bound by the DOT descriptions because SSA regulations do not require them to rely solely upon the DOT. Furthermore, the Commissioner argues that because SSR 00-4p recognizes a VE may be able to provide more specific information about jobs than the DOT, it permits an ALJ to rely on the VE over the DOT as long as the ALJ explains his reasoning. *See* SSR 00-4p, 2000 WL 1898704, at \*2 (Dec. 4, 2000). Therefore, when the ALJ asked the VE if his testimony conflicted with the DOT and the VE

responded it did not, "the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs that he identified with an overhead reaching restriction." (Dkt. 11-2, Pg ID 60).

An ALJ may accept testimony of a vocational expert that is different from information in the Dictionary of Occupational Titles and may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the Dictionary. *Conn v. Sec'y of Health and Human Servcs.*, 51 F.3d 607, 610 (6th Cir. 1995); 20 C.F.R. § 404.1566(d) . When the ALJ asked the VE if his testimony conflicted with the DOT and the VE responded it did not, "the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs that he identified with an overhead reaching restriction." *Smith v. Astrue*, 2012 WL 1232272 at *12-13 (N.D. Ohio, Apr. 12, 2012). The court in *Smith* was confronted with a similar conflict regarding an overhead reaching limitation posed by the ALJ in the hypothetical and VE testimony identifying jobs defined by the DOT as requiring unspecified reaching. *See id*.

In *Smith*, the ALJ informed the VE to notify him if any conflicts existed between the VE's testimony as to the jobs that he identified and the DOT's requirements for those jobs. When the ALJ included an overhead reaching restriction in the hypothetical presented to the VE, the VE identified the jobs that the ALJ cited in his decision. *Id*. The VE did not indicate a conflict or

47

inconsistency existed between his testimony and the DOT for his finding as to the jobs that could be performed for the hypothetical person with overhead reaching restrictions. *Id.* Moreover, while Smith includes the DOT citations and requirements for the occupations, this fails to establish that occasional overhead reaching is required by such occupations. *Id.* They do indicate that reaching is required "occasionally," meaning up to one-third of the time, but Smith provides no evidence that overhead reaching is required in these DOT descriptions. *Id.* In addition, SSR 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* (citing SSR 00–4p). Thus, the *Smith* court ruled that the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs that he identified with an overhead reaching restriction. *Id.*(citing *Conn*, 51 F.3d at 610)(ALJs and VEs are not bound by the DOT because the Social Security regulations do not require them to rely upon the DOT's classifications) and *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir.2003) (DOT occupational descriptions do not necessarily trump VE testimony)).

Here, as in *Smith*, the ALJ properly relied upon the VE testimony that plaintiff could perform the identified jobs with the occasional overhead reaching limitation. *See id.* The Sixth Circuit has held that the Social Security regulations do not require the ALJ to conduct his own investigation into the testimony of a VE

48

to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the ALJ.  *See Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir.2008); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374–75 (6th Cir.2006).  Plaintiff's counsel did not raise the issue of the alleged conflict or inconsistency at the hearing before the ALJ.  Accordingly, the ALJ was well within his authority to rely on the VE's testimony in reaching his decision that jobs existed that plaintiff could perform and the decision should not be disturbed.

### 3.   *Opinion of Dr. Al-Malahy*

An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 802 (E.D. Mich. 2013) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

When refusing to give controlling weight to a treating source, an ALJ must give good reasons for discounting the weight given to a treating-source opinion. *Dickey-Williams*, 975 F.Supp.2d at 803 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013)). These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376. This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id.*

The undersigned finds that the ALJ provided good reasons for discounting Dr. Al-Malahy's 2012 opinion, properly assigning it "minimal weight." The ALJ noted the 1987 x-ray examinations prior to Plaintiff's DLI did not show disc herniation, spinal stenosis, nerve root involvement, or specific body degenerative changes. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 452-457). Thus, the ALJ concluded Plaintiff's pre-DLI objective tests were inconsistent with Dr. Al-Malahy's opinion (authored some twenty-five years later). (Dkt. 11-2, Pg ID 59); see 20 C.F.R. § 404.1527(c)(2), (4) (opinion due more weight "the more consistent [it] is with the record as a whole"). As noted by the ALJ, Dr. Al-Malahy's impression that Plaintiff's impairment was progressive, coupled with plaintiff's objective medical findings in 1986 and 1987 (contrasted with the

objective findings two decades later), provides substantial evidence to discount Dr.
Al-Malahy's opinion regarding plaintiff's onset date.  *See Jones v. Comm'r of Soc.
Sec.*, 2015 WL 1004681, at *8 (E.D. Mich. Mar. 6, 2015) ("evidence issued after a
date last insured generally lacks probative value.")

The ALJ also properly found Dr. Al-Malahy's opinion inconsistent with
other medical evidence of record, including the contemporaneous treatment notes
from treating physician,  Dr. Berke. (Dkt. 11-2, Pg ID 59); *see Price v. Comm'r of
Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) (inconsistency with other medical
opinions valid reason to discount treating source).  Dr. Berke's treatment notes
from 1987 all indicate Plaintiff could return to vocational activities with no
excessive or repetitive bending, lifting, or twisting. (Dkt. 11-2, Pg ID 59; see Dkt.
11-7, Pg ID 308-309, 312-316). Thus, contrary to Dr. Al-Malahy's opinion, Dr.
Berke indicated, just one month before Plaintiff's DLI, that he could return to
vocational activities, with only these specified limitations. (*Id*.). Notably, Dr. Berke
did not limit Plaintiff's walking or standing, nor did he provide a specific lifting
restriction. (Dkt. 11-2, Pg ID 59; see Dkt. 11-7, Pg ID 308-309, 312-316). Given
Dr. Berke's contemporaneous treatment of plaintiff,  the ALJ's noted inconsistency
between Dr. Berke's notes and Dr. Al-Malahy's retrospective opinion was a proper
basis to discount the latter.  The undersigned finds that the ALJ's recitation of
record evidence inconsistent with Dr. Al-Malahy's opinions, as discussed *supra*,

51

served as the requisite good reason for him to assign those opinions little weight. *See Dickey-Williams*, 975 F.Supp.2d at 801-807.  Because the undersigned agrees that the ALJ properly applied the treating physician rule, remand on this matter is not necessary and the Commissioner's decision may be affirmed.

4.   *Employing Medical Expert*

Plaintiff argues that the ALJ erred by failing to enlist the help of a medical expert ("ME") to determine if he was disabled prior to his DLI.  The decision to call a ME is generally within the ALJ's discretion. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The Court may overturn the ALJ's decision only if it appears that using an ME was "necessary-rather than simply helpful-in order to allow the ALJ to make a proper decision." *Young v. Comm'r of Soc. Sec.*, 2011 WL 2923695, at *6 (S.D.Ohio, June 20, 2011)(citing *Landsaw*, 803 F.2d at 214); s*ee also, Catwell v. Soc. Sec. Admin.*, 2016 WL 4079968, at *9 (M.D. Tenn. Aug. 1, 2016). The Court finds that using an ME in this case was not necessary as the ALJ analyzed the record, both pre and post DLI, articulated his reasons for the weight given to the treating physicians, and had substantial  evidence to support his findings.  *See Schlacter v. Astrue*, 2012 WL 567609, at *11(N.D.Ohio, Feb. 21, 2012).  The ALJ simply did not have need of medical expert testimony to inform the legal determination of onset date; the ALJ reasonably relied upon the contemporaneous treatment notes and functional

limitation opinions from one treating doctor over a retrospective report from another, thereby determining that the onset date was after plaintiff's date last insured.

SSR 83-20 does not compel a different result. Where the medical record was well developed and carefully reviewed by the ALJ, courts have found that the ALJ did not err by failing to call a medical expert to infer an onset date. *Manson v. Comm'r of Soc. Sec.,* 2013 WL 3456960, at *10 (E.D.Mich., July 9, 2013)(citing *McClanahan v. Commissioner of Social Security*, 474 F.3d 830 (6th Cir.2006)). Accordingly, plaintiff's contention that the ALJ erred in failing to call a medical expert is without merit.

5.   *RFC Assessment*

Plaintiff argues that the RFC fashioned by the ALJ lacked medical support and thus was not supported by substantial evidence. Specifically, plaintiff contends that the ALJ rejected the opinions of the only medical providers who rendered opinions regarding plaintiff's functioning prior to his date last insured, Dr. Al-Sharay and Dr. Muslah. (Dkt. 11-2, Pg ID 59; Dkt. 11-3, Pg ID 139-140). According to plaintiff, the ALJ, with a record that did not contain any other assessments, improperly took on the role of medical expert and translated the raw medical data into functional limitations.  This argument ignores the contemporaneous assessments of Dr. Berke, upon which the ALJ specifically

53

relied. (Dkt. 11-2, Pg ID 57). Dr. Berke opined that plaintiff could return to vocational activities with the restrictions of no excessive or repetitive bending, lifting or twisting. (*Id*.) These limitations are reflected in plaintiff's RFC of limited range of sedentary work. (Dkt. 11-2, Pg ID 56; Dkt. 11-3, Pg ID 137, 141). To the extent the RFC strays from the limitations assessed by the medical opinions relied upon by the ALJ, it actually imposes greater functional limitations than suggested by Dr. Berke. Accordingly, any error in imposing such limitations would be harmless. *See Bradley v. Comm'r of Soc. Sec*., 2013 WL 1190259, at *11 (E.D. Mich. Jan. 8, 2013), adopted, 2013 WL 1190239, at *2 & n.3 (E.D. Mich. Mar. 22, 2013)(discrepancies between limitations from physician opinion and those in RFC in plaintiff's favor are, at most, harmless error).

### 6. *Credibility Determination*

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to

any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight." SSR 96-7p.  "It is not sufficient to

make a conclusory statement that 'the individual's allegations have been

considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he

adjudicator may find all, only some, or none of an individual's allegations to be

credible" and may also find the statements credible to a certain degree.  *Id.*

Further, to the extent that the ALJ finds that plaintiff's statements are not

substantiated by the objective medical evidence in the record, the regulations

explicitly provide that "we will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence

does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the

location, duration, frequency, and intensity of the claimant's pain or other

symptoms, (3) precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of any medication taken to alleviate pain or other

symptoms, (5) treatment, other than medication, for symptom relief, (6) any

measures used to relieve the symptoms, and (7) functional limitations and

restrictions due to the pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3); see also *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994)

55

(applying these factors).

Here, the ALJ considered and discussed plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and he found that plaintiff's allegations were not entirely credible. (Dkt. 11-3, Pg ID 141). In reaching this determination, the ALJ reasoned that the objective medical evidence did not support plaintiff's allegations. (*Id.*) Additionally, the ALJ pointed out that the 25 year lapse between his alleged onset date and application called into question the accuracy of his allegations of disabling symptoms. (Dkt. 11-3, Pg ID 141). The ALJ considered the forms and letters suggesting plaintiff was disabled but found them to be less persuasive because they were not authored contemporaneously to the alleged onset date. (*Id.*) The ALJ considered Dr. Berke's treatment, the contemporaneous x-rays, as well as plaintiff's ability to travel to Yemen and found they supported functional abilities greater than those to which plaintiff testified having. The ALJ also noted that he credited plaintiff's testimony regarding memory loss and dizziness in fashioning the RFC's nonexertional limitations and machinery and unprotected heights restrictions. (*Id.*)

Thus, the ALJ's decision is sufficiently specific to make clear to plaintiff and to the Court the weight that he gave to plaintiff's statements and the reasons for that weight. The ALJ's assessment of plaintiff's credibility is supported by substantial evidence and should not be disturbed; plaintiff's motion should be

denied in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

57

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response

Date: August 28, 2016                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 28, 2016, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov